# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RONALD SCOTT KAPLAN,**

     **Plaintiff,**

**-vs-**              **Case No.  6:10-cv-95-Orl-35DAB**

**ROBERT BURROWS,**

     **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

   This cause came on for consideration without oral argument on the following motions filed

herein:

| |
|---|
| **MOTION:**  **DEFENDANT'S MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS AND SANCTIONS, NOTICE OF FILING MOTION UNDER RULE 11 (Doc. No. 41)** |
| **FILED:**  **March 21, 2011** |
| _____ |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part** as set forth below. |
| **MOTION:**  **MARC P. OSSINSKY, ESQUIRE'S MOTION TO STRIKE DEFENDANT'S MOTION FOR AWARD OF ATTORNEY'S FEES, COSTS AND SANCTIONS (Doc. No. 47)** |
| **FILED:**  **April 6, 2011** |
| _____ |
| **THEREON** it is **RECOMMENDED** that the motion be **DENIED**. |

> **MOTION:** **PLAINTIFF'S AND COUNSELS' MOTION TO BIFURCATE PROCEEDINGS, OR ALTERNATIVELY EXTENSION OF TIME TO RESPOND TO THE ISSUE OF REASONABLENESS OF DEFENDANT'S FEES (Doc. No. 48)**
>
> **FILED:** **April 6, 2011**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part as set forth below.

Plaintiff Ronald Kaplan sued Defendant Robert Burrows. Both parties are former officers Action Products International, Inc. ("APII"), a toy manufacturer, that was experiencing difficult economic times and ceased paying certain employees, including Kaplan, Burrows, and others. A number of lawsuits were filed and the same two attorneys, Marc Ossinsky and Robert Blanchfield, represented at various times an unpaid former executive, Ronald Kaplan, and in different litigation, represented APII and/or Warren and Judith Kaplan, principals of APII and the parents of Ronald Kaplan[1].

Ronald Kaplan, a former Chief Executive Officer of APII, filed suit on January 19, 2010 alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") by Burrows, a former Chief Financial Officer who allegedly had operational control of salaries and, as Kaplan describes it, "reduced Kaplan's wages to zero." Following Judge Scriven's grant of summary judgment to Burrows, he filed this Motion for Sanctions. Burrows contends that Ronald Kaplan's suit was filed "purely for the purpose of harassing" Burrows and "to punish him for taking action to enforce [Burrows'] contractual rights against APII" since Kaplan (and his counsel Blanchfield) were

---

[1]Warren and Judith Kaplan were sued by an APII employee, Debra Rutledge, and others in Case No. 6:09-cv-1245-35GJK. The Court does not address the conflict of interest issues that may have derived from Blanchfield and Ossinsky representing APII and/or its principals to defend claims by employees and subsequently representing one of those unpaid employees, Ronald Kaplan.

adverse to Burrows in his arbitration action against APII for earnings Burrows claimed he was owed

under an employment agreement with APII. *See* Doc. 41-1.

Because the Court finds sanctions against Kaplan and his counsel are warranted, it is

respectfully **RECOMMENDED** that Burrows' Motion for Sanctions (Doc. 41) be **GRANTED in**

**part**, with the Court to reserve jurisdiction to determine the appropriate sanction.

### I.  Procedural History

Before Ronald Kaplan ever filed his Complaint in this Court, he had filed previously suit

against APII in state court on June 22, 2009 for unpaid wages and other claims.  In the state case, on

November 19, 2009, the court entered a default in Kaplan's favor against APII for the unpaid wages.

Doc. 49 ¶ 6.  Then, on January 19, 2010, Kaplan came over to this Court to file a Complaint again

alleging that he had not been paid his salary, but naming as the only Defendant Robert Burrows, who

during the relevant time period served as Chief Financial Officer of APII. Kaplan argued that he was

due a "minimum wage" under the FLSA, and that Burrows retaliated against him for complaining

about the unpaid wages by constructively discharging him.  Doc. 1.  Almost immediately, on February

9, 2010, Burrows served on Robert Blanchfield, as counsel for Kaplan, a motion for sanctions under

Federal Rule of Civil Procedure 11.  Doc. No. 41-1.  Burrows took no further action, such as filing

the Rule 11 Motion, for more than one year – until after summary judgment was entered.

On July 28, 2010, Burrows filed a Motion for Summary Judgment on Kaplan's FLSA claims

(Doc. 24), which Judge Scriven granted on March 8, 2011, holding that the claim for unpaid wages

under FLSA was precluded by the default judgment entered in the state court case, and Kaplan was

unable to establish a prima facie case for retaliation because he knew or should have known that the

FLSA did not extend protection to administrative employees being compensated at $160,000 per year.

Doc. No. 40 at 12.

Two weeks later, on March 21, 2011, Burrows filed his Motion for Sanctions under Rule 11, contending that he should be awarded attorneys' fees, costs and sanctions against Kaplan, and his attorneys, Marc P. Ossinsky and Robert Blanchfield; he also seeks sanctions against the attorneys pursuant to 28 U.S.C. § 1927 ("Section 1927"), as well as pursuant to the Court's inherent power to sanction.

On April 6, 2011, Plaintiff's counsel – without leave of Court – simultaneously filed two *separate* responses, more than half of each of which are nearly verbatim argument that should have been combined in a single document. The first response filed by Marc Ossinsky ("Ossinsky's Response"– Doc. 47) incorporated a Motion to Strike, arguing that Burrows' Motion for Sanctions should be stricken because he had failed to conduct a Local Rule 3.01(g) conference before filing it. The second response filed by Robert Blanchfield, represents the arguments made on behalf of Kaplan and himself. ("Blanchfield Response" – Doc. 49)

Collectively, Kaplan's attorneys argue that they did not cause the proceedings to be multiplied as required for sanctions under § 1927 and Burrows has failed to specifically identify bad faith conduct by Kaplan's counsel; and, if sanctions are not warranted under § 1927, then they are not warranted under the court's inherent powers. They also argue that Burrows did not comply with service and filing requirements under Rule 11, and such sanctions are not applicable anyway to Ossinsky as substitute counsel. Kaplan additionally filed a motion requesting bifurcation of Burrows' Motion for Fees, requesting that the Court rule on the issue of entitlement to sanctions before Kaplan, Blanchfield and Ossinsky have to present their arguments with regards to the reasonableness of the amount of any potential fee award. Doc. No. 48.

## II. Factual Background[2]

Plaintiff Ronald Kaplan and Defendant Robert Burrows are former officers and employees of APII, a business engaged in the manufacturing and sale of toys. Kaplan worked at APII for twenty-three years from 1986 until February 2009 and served as its Chief Executive Officer until at least July of 2008. Kaplan's parents were also principals in APII, and his father Warren Kaplan is also a former CEO of the company.

Robert Burrows served as Chief Financial Officer of APII from November 2007 until his resignation in February 2009. At some point between July 2008 and September 2008, APII appointed Neil Swartz as CEO in place of Kaplan. Kaplan remained employed at APII until February 2009, as Executive Vice President in Corporate Development, with duties including evaluating potential acquisitions and business development opportunities and providing insight on the global toy market. Kaplan earned an annual salary of $160,000.

From late 2008 until February 2009, APII deferred the payment of wages for certain executive employees, including Kaplan and Burrows. At some point between November 2008 and December 2008, Kaplan complained to Burrows about the cessation of his salary payments. In February 2009, Kaplan resigned from APII. Burrows sought arbitration of his unpaid salary claims against APII under an employment agreement with APII – which Ronald Kaplan had signed as CEO of APII at that time; Burrows received a favorable award on May 5, 2010, which was entered as a judgment on July 19, 2010. Doc. 41-1.

On July 22, 2009, Kaplan filed a complaint in the Circuit Court of the Ninth Judicial Circuit in and for Orange County against APII claiming that APII breached its employment contract with Kaplan by failing to pay Kaplan's wages from November 3, 2008 until February 15, 2009. The

---

[2] The factual background is adopted from Judge Scriven's Order Granting Summary Judgment. Doc. No. 40.

Circuit Court of the Ninth Judicial Circuit in and for Orange County entered a default final judgment in Kaplan's favor on November 19, 2009 against APII in the amount of $15,938.47 plus interest for the unpaid wages claim and additional amounts for Kaplan's other claims.

### III.  Analysis

Burrows seeks sanctions against Kaplan and Kaplan's attorneys, Blanchfield and Ossinsky, under Rule 11, 28 U.S.C. § 1927, and the Court's inherent powers.  For the reasons set forth, the Court finds sanctions to be warranted against Kaplan, Blanchfield, and Ossinsky for violating Rule 11, but not pursuant to § 1927 or the Court's inherent power.

A.  *Rule 11 Sanctions*

Burrows' Motion for Fees first seeks sanctions on the basis of Federal Rule of Civil Procedure 11.  Doc. No. 41-1.  Rule 11 was designed to "discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses."  Fed. R. Civ. P. 11 advisory committee's note (as amended in 1983).  Rule 11 provides in part:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> > (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  Procedurally, Rule 11 sanctions can only be imposed on "either the attorney, the party the signing attorney represents, or both, or on an unrepresented party who signed the

pleading" and the person must have either signed, filed, submitted, or later advocated a pleading,

written motion, or other paper that violates Rule 11[3]. Fed. R. Civ. P. 11(b); *See Robinson v. Nat's*

*Cash Register Co.*, 808 F.2d 1119, 1128-29 (5th Cir. 1987) (holding that an attorney must actually

sign document to have sanctions imposed against him), *overruled in part on other grounds*, *Thomas*

*v. Capital Security Services, Inc.*, 836 F.2d 866 (5th Cir.1988) (en banc) (once Rule 11 violation is

found, court must impose sanctions).  Although the rule:

> applies only to assertions contained in papers filed with or submitted to the court . . .
> a litigant's obligations with respect to the contents of these papers are not measured
> solely as of the time they are filed with or submitted to the court, but include
> reaffirming to the court and advocating positions contained in those pleadings and
> motions after learning that they cease to have any merit. For example, an attorney who
> during a pretrial conference insists on a claim or defense should be viewed as
> "presenting to the court" that contention and would be subject to the obligations of
> subdivision (b) measured as of that time.

Fed. R. Civ. P. 11, advisory committee's note (as amended in 1993).  The party seeking sanctions

must file an independent motion identifying the conduct that violated Rule 11.  *Id.* ("The rule provides

that requests for sanctions must be made as a separate motion, *i.e.*, not simply included as an

additional prayer for relief contained in another motion.").  In order to provide a "safe harbor" period,

the motion should not be filed any earlier than 21 days after service so that the offending party may

withdraw or correct the alleged violation.

---

[3] Rule 11 provides:
(c) Sanctions.
(1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule
11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or
party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law
firm must be held jointly responsible for a violation committed by its partner, associate, or employee.
(2) *Motion for Sanctions.* A motion for sanctions must be made separately from any other motion and
must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under
Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense,
contention, or denial is withdrawn or appropriately corrected within 21 days after service or within
another time the court sets. If warranted, the court may award to the prevailing party the reasonable
expenses, including attorney's fees, incurred for the motion.
Fed. R. Civ. P. 11(c).

When assessing Rule 11 sanctions, "the Court is required to conduct a two-part inquiry, deciding (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Watson v. Capital One Servs., LLC*, No. 3:10–cv–358–J–37JRK, 2011 WL 2560230, at \*7 (M.D. Fla. June 7, 2011) (internal quotations omitted) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1105 (11th Cir. 2001)).  "The standard for testing conduct under amended Rule 11 is reasonableness under the circumstances, a standard more stringent than the original good-faith formula." *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987) (*en banc*) (internal quotations omitted) (quoting Fed. R. Civ. P. 11, advisory committee's note (as amended in 1993)).  The Eleventh Circuit has held that Rule 11 sanctions are appropriate "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success . . . ; and (3) when the party files a pleading in bad faith for an improper purpose." *Pelletier v. Zweifel*, 921 F.2d 1465, 1514 (11th Cir. 1991) (citing *United States v. Milam*, 855 F.2d 739, 742 (11th Cir. 1988)).

1. *Procedural Issues*

Kaplan and his counsel argue that Burrows' Motion for Rule 11 Sanction fails to meet the procedural and notice requirements established by Rule 11(c).  Kaplan and his counsel contend that Burrows failed to serve the Motion for Rule 11 Sanctions properly.

Kaplan and counsel assert that 21 days before filing (or by February 19, 2011), Burrows should have served them with a proposed Motion for Rule 11 Sanctions.  However, it is undisputed that Burrows served Kaplan and Blanchfield with the proposed Motion on February 9, 2010, which was one *year* before the actual Motion for Sanctions was finally filed on March 21, 2011.  *See* Doc. No. 41-1.  Kaplan and Blanchfield were aware that Burrows intended to file a Rule 11 motion, and they had more than one year to withdraw or amend the Complaint in order to avoid violation of Rule

11. Burrows satisfied the purpose of the safe harbor provision in Rule 11 by serving Kaplan and Blanchfield with the Motion for Rule 11 Sanctions more than one year before filing.

Kaplan and his counsel also contend that, by filing the Rule 11 sanctions argument as part of a larger Motion that also requests sanctions pursuant to § 1927 and the court's inherent power, Burrows' Motion for Fees violated the requirement that motions for Rule 11 sanctions be "filed separately from any other motion." Fed. R. Civ. P. 11.

Although the Eleventh Circuit has not addressed this particular issue, other courts have found that parties can argue Rule 11 and § 1927 grounds for sanctions in the same motion. *See Ridder v. Springfield*, 109 F.3d 288, 294 (6th Cir. 1996) (holding that Rule 11 motions can be combined with a motion for sanctions pursuant to § 1927 because the drafters intended Rule 11 motions to be filed separately from other motions on the merits but not necessarily from other motions regarding attorney behavior). Rule 11(c) requires a motion for sanctions to be independent in order to prevent it from getting overwhelmed by other motions on the merits. *See* Fed. R. Civ. P. 11, advisory committee notes (as amended in 1993). Here, filing the argument for Rule 11 sanctions as part of a larger motion for attorney's fees, costs, and sanctions based on multiple grounds, does not run the risk it will be lost among a motion for relief on the merits. Burrows' Motion for Sanctions will not be denied based on these procedural grounds.

Ossinsky, as counsel who did not enter the case until many months after the Complaint was filed (not until December 30, 2010), argues that he was never served with the Rule 11 Motion that was served on Plaintiff in February 2010, which was ten months before he entered an appearance in the case. Burrows acknowledges that Ossinsky did not make an appearance until December 30, 2010, but argues that Ossinsky received notice of the existence of the prospective Rule 11 motion through a January 3, 2011 email:

> I'm sure Bob Blanchfield has made you aware that we served upon plaintiff and his counsel a Rule 11 motion at the outset of this case.  When, as we expect, the Court rules on our current motion for summary judgment and disposes of the case, we do intend to seek sanctions under the Rule.  If Bob has not previously informed you of this, please consider this email your notice to that effect.

Doc. No. 41-5. Ossinsky raises several procedural issues with such an attempt at service, arguing they do not meet the requirements of Rule 11.

Ossinsky argues that he did not sign the offending document, the Complaint and, therefore, he cannot be held liable for sanctions under Rule 11.  In the original Motion for Rule 11 Sanctions first served on Plaintiff in February 2010, Burrows identifies the Complaint as the offending document, and this clearly was not signed by Ossinsky, but was signed by Blanchfield.  *See* Doc. 41-1; Doc. 1.  Rule 11 sanctions can only be imposed on "either the attorney, the party the signing attorney represents, or both . . . *who signed the pleading*" and that person must have signed, filed, submitted, or later advocated a pleading, written motion, or other paper that violates Rule 11.  Fed. R. Civ. P. 11(b) (emphasis added).  Although "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation," Fed. R. Civ. P. 11(c), Ossinsky argues that he was not responsible for the Complaint considering he was not co-counsel until December 2010, and the Motion should not be granted as to him because it was targeted to a document that he had not signed.  Ossinsky's argument fails for two reasons.

Rule 11 imposes upon late-entering or substitute counsel a duty to investigate the legal and factual sufficiency of the claims he or she takes up. Under Eleventh Circuit precedent, "[b]y appearing in this case, [substitute counsel] affirm[s] to the court that the case ha[s] arguable merit.  In this sense, it was as if [substitute counsel] had refiled the complaint.  To use Rule 11's words, he was 'later advocating' that the 'factual contentions [in the complaint] have evidentiary support.'" *Turner v. Sungard Business Systems, Inc.*  91 F.3d 1418, 1421 (11th Cir. 1996) (holding substitute counsel's signature on the notice of appearance standing alone was sufficient to subject him to Rule 11

sanctions where he continued to advocate contentions after it should have been clear that they were no longer tenable). In this case, Ossinsky was additionally put on notice through the email from Burrows' counsel referring to the Rule 11 motion that issues had been raised with the sufficiency of Kaplan's claims from the outset of the case. In addition, Ossinsky filed more than just a notice of appearance, as substitute counsel did in *Turner*. Once Ossinsky entered the case on December 30, 2010, he also served a notice setting Burrows' deposition for January 14, 2011, two weeks after entering his appearance in the case. Doc. 41-4.

The procedural objections raised by Kaplan, Blanchfield, and Ossinsky do not present sufficient grounds to deny the Motion for Rule 11 Sanctions.

2. *Merits of Rule 11 Motion*

Turning to the merits of the Rule 11 Motion, the Court finds sanctions against Kaplan, Blanchfield, and Ossinsky are warranted because Kaplan's claims for unpaid wages and retaliation were objectively frivolous –or "patently unreasonable" – and they should have known that the claims were frivolous. Rule 11 imposes a duty on counsel to make a reasonable inquiry before filing any written document to ensure that the assertions are not objectively frivolous. Claims that either lack factual support or rely on a legal theory "that has no reasonable chance of success" violate Rule 11. *Pelletier*, 921 F.2d at 1514 (citing *United States v. Milam*, 855 F.2d 739, 742 (11th Cir. 1988)).

Kaplan's claims were based on the legal theory that Kaplan was entitled to protection under the FLSA for unpaid wages and retaliation claims. Kaplan asserted that he was entitled to unpaid wages under the FLSA and that, even though he had already litigated this issue in state court, his claim for wages was still viable in federal court because he insisted that he "received no unpaid wages as a result of the state court complaint." Doc. No. 49.

Kaplan's claims under the FLSA were frivolous because Kaplan was exempt from the FLSA and knew or should have known that he was exempt. Kaplan asserts that his claim for wages and

-11-

Burrows' allegedly retaliatory actions were based on Kaplan's "objectively reasonable belief that [Burrows'] failure to pay [Kaplan] any wages violated the law." Doc. No. 49.  Even at this juncture, when Judge Scriven has *already ruled*, granting summary judgment, Ossinsky and Blanchfield continue to insist on arguing that because Kaplan's "wages were reduced to zero dollars" and he was not receiving the minimum salary of an exempt employee[4], he was entitled to sue for minimum wage and retaliation claims.

In a determination that is the law of this case, Judge Scriven found that "Plaintiff's asserted belief that he was protected by FLSA in the payment of his wages, even if honestly, subjectively held, was *patently unreasonable*," Doc. No. 40 (emphasis added).  Judge Scriven found that Kaplan "could not have reasonably believed that he was statutorily protected by FLSA because he was undeniably at least an administrative employee when he complained to Defendant Burrows."  Doc. No. 40.  In the Order granting summary judgment, Judge Scriven notes that:

> Plaintiff appears to recognize that he was an exempt employee under FLSA, as his Response fails to address the arguments in this regard. . . . Kaplan's asserted defense that he was not trained in the law and, therefore, his abject ignorance of the law's requirement should suffice to place him in the protected category is unpersuasive.  To ascribe such broad protection under the statute based solely on ignorance of the law would effectively 'eviscerate the objective component of our reasonableness inquiry.'

Doc. 40.

Judge Scriven also found that Kaplan's compensation issues were *res judicata* since he had already been awarded compensation through the state court default judgment against APII entered on November 14, 2009, which barred the wage claim from being relitigated[5]. Doc. 40. Kaplan's inability to collect on his state court judgment does not alter the status of his employment or the nature of the

---

[4]Doc. 47 at 4; Doc. 49 ¶ 5.
[5]Kaplan apparently did not contest the demand for summary judgment on the wages claim in Count I.  *See* Doc. 40 at 8.

claims adjudicated.  Having successfully pursued one case claiming administrative salary, he cannot claim the benefits of being non-exempt in subsequent litigation.

Both Ossinsky, who represented Kaplan in the state court lawsuit, and Blanchfield, who filed the suit in this Court, were aware that Kaplan had been awarded unpaid wages in his claim against APII in state court and, they should have known the FLSA claim against Burrows for the same wages was barred by the doctrine of res judicata, given the state court default judgment.  Doc. No. 40.

As to whether Kaplan and his attorneys litigated against Burrows "purely for the purpose of harassing Defendant Burrows and to punish him for taking action to enforce his contractual rights against APII," it certainly appears from the unique circumstances surrounding the filing of this case that Kaplan and counsel's actions were taken in bad faith for an improper motive.  Given the inherently suspect nature of Kaplan's FLSA claims, the suit against Burrows appears to be retaliatory.

Burrows and Kaplan simultaneously filed separate suits against APII for unpaid compensation in July 2009.  Burrows proceeded through arbitration, bound by an employment agreement with APII, and Kaplan filed his claim for unpaid wages in state court.  Burrows' case proceeded until he received an arbitration award in May 2010.  In the midst Burrows' case against APII, Kaplan received a default judgment against APII in state court in November 2009, but nevertheless filed suit against *Burrows individually* in this Court in January 2010.

Beyond the fact that Plaintiff asserted a legal theory that had no reasonable chance of success, the claims were filed *solely* against Burrows and not against APII, Blanchfield at the same time was *defending* APII in the arbitration for unpaid salary brought by Burrows[6], and both Blanchfield and Ossinsky were representing Kaplan's parents, officers and directors of APII – Warren Kaplan was at that time CEO and on the Board of Directors – against an FLSA suit by Rutledge and other former

---

[6]Blanchfield apparently withdrew from representation of APII on April 6, 2010. *See* Doc. 41 at 4.

employees.  Ronald Kaplan, as an adverse party to Burrows and an insider (former CEO) at APII

chose to litigate against Burrows using the same counsel who was representing APII *against* Burrows

in the arbitration.  In this case, the history of litigation and the "patently unreasonable" nature of

Kaplan's FLSA claims support a finding of bad faith and the improper motive of retaliation.  It is

respectfully **RECOMMENDED** that Rule 11 Sanctions be imposed against Ronald Kaplan, Marc

Ossinsky, and Robert Blanchfield.  The nature and extent of those sanctions, as well as the relative

responsibilities of counsel and client, should be determined in a separate proceeding if this

recommendation is adopted.

2. *Sanctions Pursuant to 28 U.S.C. § 1927 and the Court's inherent power*

Burrows moves for sanctions under 28 U.S.C. § 1927 against Kaplan's attorneys, arguing they

should be sanctioned for their unreasonable and vexatious conduct that multiplied the proceedings.

Doc. No. 41.  Burrows also seeks sanctions of Kaplan and counsel based on the Court's inherent

power to sanction.

Section 1927 reads:

Any attorney or other person admitted to conduct cases in any court of the United
States or any Territory thereof who so multiplies the proceedings in any case
unreasonably and vexatiously may be required by the court to satisfy personally the
excess costs, expenses, and attorneys' fees reasonably incurred because of such
conduct.

28 U.S.C. § 1927.

Section 1927's purpose is to "deter frivolous litigation and abusive practices by litigants and

to ensure that those who create unnecessary costs bear them."  *Smartt v. First Union Nat'l Bank*, 245

F.Supp.2d 1229, 1234-35 (M.D. Fla. 2003) (citing *O'Rear v. Am. Family Life Assurance Co. of

Columbus, Inc.*, 144 F.R.D. 410, 413 (M.D. Fla. 1992)).  In order to justify an imposition of sanctions

under this section, three requirements must be observed: 1) an attorney must engage in "unreasonable

and vexatious" conduct; 2) such conduct must "multiply the proceedings;" and 3) the amount of the

sanctions cannot exceed the costs incurred due to the conduct. *Jerelds v. City of Orlando,* 194 F.

Supp. 2d 1305, 1312 (M.D. Fla. 2002) (citing *McMahan v. Toto,* 256 F. 3d 1120, 1128 (11th Cir.

2001)).

The meaning of "unreasonable and vexatious" is subject to interpretation.  "Black's Law

Dictionary defines the term 'vexatious' to mean 'without reasonable or probable cause or excuse;

harassing; annoying.' It further defines 'vexatious suit' to mean a 'lawsuit instituted maliciously and

without good cause.'" *Smartt,* 245 F.Supp.2d 1234-35 (M.D. Fla. 2003) (quoting *Black's Law*

*Dictionary* 1559 (7th ed. 1999)).  Although some courts require a showing of intent, recklessness or

subjective bad faith, in *Jerelds,* 194 F. Supp. 2d. at 1312, the district court held that the standard is

objective.  A plaintiff may have a good faith basis for pursuing a claim, but if their continued conduct

and abuse of the judicial system is tantamount to bad faith, § 1927 sanctions become appropriate.  *See*

*Jerelds,* 194 F. Supp. 2d at 1312-13; *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1178 (11th Cir. 2005)

(noting that the sanctions under the court's inherent powers requires a finding of subjective bad faith,

but § 1927 only requires that if the conduct was not intentionally done in bad faith, it must be

objectively as serious as, or equivalent to, bad faith conduct).

If the attorneys' conduct was not done with intentional bad faith, "merely unintended,

inadvertent, and negligent acts will not support the imposition of sanctions under § 1927; [r]ather, the

power to impose sanctions under § 1927 should be exercised only in instances of a serious and studied

disregard for the orderly processes of justice." *Jerelds,* 194 F. Supp. 2d at 1312 (internal citations

omitted); *see Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) (when counsel

"knowingly or recklessly pursues a frivolous claim," the district court may order sanctions under §

1927).  When an attorney has "unreasonably and vexatiously" multiplied the proceedings, the attorney

must be required to personally satisfy the fees incurred by such conduct. *Dictiomatic, Inc. v. United States Fid. & Guar. Co.*, 127 F.Supp.2d 1239, 1247 (S.D. Fla. 1999).

A court may impose sanctions for litigation misconduct under its inherent power. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298 (11th Cir. 2009) (affirming sanction of dismissal for defendant's litigation misconduct, *i.e.*, his refusal to explain his interception of confidential emails between plaintiffs and attorneys) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991)). The court's inherent power derives from the court's need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43 (quotation marks and citation omitted). This power, however, "must be exercised with restraint and discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). "The key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). Although Burrows seeks sanctions based on the Court's inherent power to sanction, he fails to any specific conduct separate and apart from the conduct alleged in relation to § 1927 or Rule 11.

Burrows argues Kaplan's attorneys took inconsistent and adverse positions in this lawsuit and in *Rutledge et al. v. Action Prods. Int'l, Inc.*, Case No. 6:09-CV-1245-ORL-35-GJK (M.D. Fla. 2009), where Kaplan's counsel, Ossinsky and Blanchfield, represented Kaplan's parents (who were aligned as Defendants with APII). In *Rutledge*, Burrows and Kaplan's co-worker from APII, Debra Rutledge, filed FLSA wage and retaliation claims against APII and Warren and Judith Kaplan. Burrows contends that Kaplan's counsel in this suit, who were simultaneously defending the Kaplan parents in *Rutledge,* plagiarized whole sections of summary judgment[7] argument that Burrows' counsel made in this case, and by recycling these arguments, Kaplan's attorneys revealed their lack of faith in their

---

[7]Ossinsky and Blanchfield's conduct in another case allegedly plagiarizing arguments is not before this Court, except to the extent they continued pursue "patently unreasonable" claims in this case.

own wage and retaliation case against Burrows. Burrows further argues sanctions are appropriate because Kaplan's attorneys' multiplication of the litigation of the case amounts to bad faith.

Burrows contends that the actions of Kaplan's attorneys show that the "entire instant case was unreasonable and vexatious and led to additional unnecessary litigation in both the instant proceedings and the Rutledge lawsuit." Doc. No. 41. As vexatious and multiplying conduct, Burrows cites Ossinsky's decision to take the deposition of Burrows, which was apparently not cited or otherwise used in the short 7-page response to summary judgment filed by Kaplan. Doc. 28. Burrows argues that Ossinsky took Burrows deposition in this case in order to avoid having to subpoena Burrows for a deposition in *Rutledge* (where Burrows was not a party), and thus, Ossinsky and Blanchfield "unreasonably contributed to [his] defense costs." Doc. No. 41.

Ossinsky responds that the case only "involve[d] a simple two count complaint, initial disclosures and little subsequent discovery," Doc. 47. Ossinsky argues that Burrows fails to identify "any filing or action other than the filing of the Complaint that is vexatious that caused the proceedings to multiply." Doc. 47.

Section 1927 addresses "dilatory tactics throughout the entire litigation" and is focused solely on attorney conduct. *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001). Section 1927 sanctions are not appropriate when based solely on a frivolous complaint. *Velez v. Levy World Ltd. P'ship,* 6:03-cv-878-Orl22DAB, 2007 WL 842768, *4 (M.D. Fla. March 20, 2007) (holding that the language of Section 1927 indicates sanctions can only be applied to unnecessary filings after the lawsuit has begun and are not appropriate for frivolous initial filings). As in this case, when a frivolous complaint is at the root of a defendant's unnecessary litigation expenses, rather than any particularly extraordinary or dilatory litigation tactics, Rule 11 is the more appropriate sanction. *See Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 786 (11th Cir. 2006) (holding a strict interpretation of Section 1927 requires the

offending attorney to cause the multiplication of proceedings which can only occur after the initial filing and that Rule 11 sanctions are more appropriate for frivolous complaints). As the Court concludes above, the offending conduct was Plaintiff's filing of a "patently unreasonable" FLSA claims against Burrows, rather than counsel's filing of a response to summary judgment, as inadequate as it was, or their deposing Burrows which were ordinary litigation strategies, albeit premised on a frivolous Complaint. For the reasons set forth above, it is respectfully **RECOMMENDED** that sanctions be imposed against Kaplan, Blanchfield, and Ossinsky solely on the basis of Rule 11.

3. *Failure to hold Rule 3.01(g) conference*

Blanchfield and Ossinsky argue – as a complete bar to any sanctions ruling – that Burrows' Motion for fees should be stricken for Burrows' alleged failure to hold a Rule 3.01(g)[8] conference prior to filing the Motion for Sanctions. Blanchfield and Ossinsky argue that although Burrows did confer with them on a motion for Rule 11 sanctions, counsel failed to discuss *all* of the bases for sanctions (based on § 1927 and the Court's inherent power) that ended up in the Motion for Sanctions as filed.

They argue that Burrows' failure to hold a Rule 3.01(g) conference on all three bases for sanctions is a sufficient reason, in and of itself, to deny the Motion for Sanctions as to the additional two theories, and/or strike the entire Motion. Doc. 47. Burrows' counsel argues that the series of emails between himself and Ossinsky and Blanchfield show the difficulties he and his counsel have had communicating with Kaplan's counsel and that the emails attempting to settle the issue with Ossinsky and Blanchfield are sufficient to satisfy Rule 3.01(g). Doc. 52.

---

[8]Local Rule 3.01(g) requires counsel, before filing any motion in a civil case, that the moving party confer with counsel for the opposing party in a good faith effort to resolve the issues raised by the motion. Middle District of Florida Local Rule 3.01(g).

The purpose of Local Rule 3.01(g) is to force counsel to try to achieve a resolution of a motion without judicial intervention and use of judicial resources.  The exhibits indicate that Burrows made many attempts to communicate with Kaplan's counsel, who were admittedly aware that Burrows was seeking sanctions against Kaplan and counsel, who were (not surprisingly) opposed to any agreement on attorney's fees or sanctions.  Burrows fulfilled the spirit of the requirements of Local Rule 3.01(g) because Kaplan and counsel were on notice Burrows was seeking sanctions against them.  Further Rule 3.01(g) conferences in this case regarding additional grounds for sanctions would have been redundant and futile.  Moreover, in light of the Court's recommendation that sanctions be awarded based solely on Rule 11, the failure to confer specifically on the other grounds for sanctions is a moot point.  It is respectfully **RECOMMENDED** that the Motion to Strike Defendant's Motion for Sanctions (Doc. No. 47) be **DENIED.**

4. *Nature and Amount of Sanctions[9]*

Although Burrows has submitted an affidavit of fees (Doc. 42) and expert affidavits, there is no analysis or citation to authority of the total lodestar or calculation of reasonable hours, or apportionment among Kaplan, Blanchfield, and Ossinsky, to be awarded in the Motion for Sanctions.  Mr. Swank's affidavit suggests $58,542 is a reasonable amount of fees, with costs of $2,223, for a total of $60,766; an expert affidavit is filed as well.  Doc. 42, 44.  However, it appears that there are entries within the billing sheets concerning the *Rutledge* case, and to the attorney in that case (Chapman), which are not reasonable to charge against Kaplan and counsel.  Kaplan and counsel have requested bifurcation of the proceedings with any opportunity to argue the reasonableness of the proposed fees

---

[9]Defendant takes as a given that the appropriate sanction under Rule 11 is an award of attorneys fees.  The Comments accompanying Rule 11, however, do not support this assumption inasmuch as the primary purpose of Rule 11 is deterrence, not compensation.

and costs if the Court decides to award sanctions, or in the alternative, an extension of time to respond to the reasonableness of Burrows' fees.  Doc. No. 48.

To the extent Kaplan and counsel seek to bifurcate the type and amount of sanctions from whether sanctions are appropriate, it is respectfully **RECOMMENDED** that the issue be revisited following Judge Scriven's ruling in consideration of this Report and Recommendation.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on September 6, 2011.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy