UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RONALD KAPLAN

       Plaintiff,                              6:10-cv-95-ORL-18DAB

v.

ROBERT BURROWS,

       Defendant.

_____/


### PLANITFF and Counsel BLANCHFIELD'S OBJECTION TO REPORT and RECOMMENDATION

Comes now, Plaintiff and counsel, through undersigned counsel, hereby files this response objecting to this Court's Report and Recommendation.

The complaint in this matter alleges violation of the wage provision of the Fair Labor Standards Act ("FLSA") and associated retaliation . On July 28, 2010 and prior to the taking of any discovery, Defendant filed a motion for summary judgment arguing that judgment should be entered in favor of Defendant on both Plaintiff's underlying unpaid wage claim and the retaliation claim.  This Court granted that motion.

Plaintiff then filed a motion for sanctions and this Court issued its Report and Recommendation recommending the imposition of sanctions under Fed. R. Civ. P. 11. For several reasons more fully described herein, Plaintiff and his counsel Robert Blanchfield, object to the Report and Recommendation regarding imposition of sanctions.

.

As an initial matter, it is correct that Plaintiff filed a complaint under the FLSA for unpaid wages and retaliation against Burrows in January 2010. It is not correct that attorney Blanchfield was aware that judgment had been entered for wages in favor of Kaplan in state court the preceding month. Once made aware of that fact by counsel for Plaintiff, Blanchfield telephoned counsel for Plaintiff to explain that Kaplan would not seek wages pursuant to the FLSA, but decided against amending the answer for two reasons. First, Defendant through counsel was aware that Plaintiff would not pursue wages as part of the claim and second, Kaplan continued to believe that Burrows had violated the FLSA and that declaratory relief was appropriate. Significantly, in response to Burrows damages interrogatory, Kaplan does not claim any wage damages under the FLSA. The service and the response to those interrogatories occurred after to the filing of summary judgment.

Given that this Court has granted summary judgment, the issue is the appropriateness of sanctions given the nature of the claims made by Kaplan and the factual support for those claims.

In the "Report and Recommendation", this Court points to a possible motive of Kaplan against Burrows for Burrows bringing a claim for wages against APII. At the time Burrows brought this claim, Kaplan was no longer employed by APII and had absolutely no concern or interest in APII activities. Kaplan Aff. ¶2. Kaplan filed his complaint against Burrows because of the very specific action taken by Burrows against Kaplan and for no other reason. Kaplan Aff. ¶2.

Regarding the specific claims made by Kaplan, a claim for retaliation under the

FLSA requires a demonstration by plaintiff of the following 1) he engaged in a protected activity under the FLSA; 2) he subsequently suffered an adverse action; and 3) a causal connection existed between the employee's activity and the adverse action(s).  *Wolf v Coca-Cola Company*, (11th Cir. 2008); citing *Richmond v. ONEOK, Inc*., 120 F. 3d, 205, 209 (10th Cir. 1997).

As an initial matter, Kaplan had been employed in a variety of capacities with APII over more than twenty years.  In 2008, at the direction of Robert Burrows, who duties among other included CFO at the time, Kaplan's pay was reduced.  Kaplan's Aff. ¶6-7.  Burrows was at the time controlling which employees were getting paid and which employees were not.   Burrows continued to pay or otherwise compensate himself and others during this period, but not Kaplan.   Kaplan Aff. ¶7; See Exh. 1 to Kaplan Affidavit.   The attached payroll register establishes that Kaplan was being paid about $338 biweekly toward the end of 2008.  See Exh. 1 to Kaplan Affidavit.

Believing he was entitled to be paid his regular salary for work performed, Kaplan complained to Burrows.  Kaplan Aff. ¶9.  As a direct result of this complaint, Kaplan's authority and duties were quickly reduced to the point where Kaplan no longer possessed "exempt" type duties.  Following this reduction in duties by Burrows, Kaplan complained to Burrows about his reduction in duties, possible violation of certain SEC regulations and his pay.  Following this complaint, Kaplan's authority was further reduced.  Kaplan Aff. ¶9.  In fact, while Kaplan's duties as vice president were to evaluate, value and analyze possible acquisitions for APII and to provide insight to the company concerning the global toy market, those significant duties and authority were completely taken away following Kaplan's subsequent complaints to Burrows.  It would

seem arguable that Kaplan reasonably believed he was engaged in a "protected activity" when he complained to Burrows.

In the Order Granting Summary Judgment, the Court correctly points out and Kaplan agrees that, based on his duties and pay, he was "exempt" from the minimum wage provisions of the FLSA prior to his reduction in pay and duties. However, it would appear he was no longer exempt following those occurrences. More specifically and as stated above, Kaplan's pay was reduced to well below $455 per week biweekly in 2008. (See Exhibit 1 to Kaplan Affidavit). At the time of his original complaint, Kaplan, based on the salary test under the FLSA was not exempt from the minimum wage and overtime provisions of the FLSA. See DOL WH Op. 2009-18 January 16, 2009. In additional, following his original complaint to Burrows, Kaplan's duties were reduced to the point where he no longer had any authority nor ability to employ independent discretion in his decision making. See e.g. *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896 (3d Cir.1991). Specifically, Kaplan did not perform work directly related to the management or general business operations of the employer. Following his initial complaint, Kaplan lacked the authority to make independent decisions free from supervision and never acted in a leadership or supervisory role. It would therefore appear Kaplan met neither of the tests under the FLSA regarding exempt status. It would likewise appear that Kaplan had a good faith belief that he was engaged in a protected activity through such complaints.

During the period of time up through and including July 2008, Kaplan did have work to pursue mergers/acquisitions for APII and performed other executive type functions. He also performed legal and regulatory support regarding SEC compliance. Kaplan Aff. ¶3. At no point did Kaplan perform any duties nor did he have any training

nor was he an expert in the area of employment law. Kaplan reasonably believed that his complaints to Burrows regarding wages and duties and the subsequent actions taken against him as a result of such complaints were protected by the FLSA. Kaplan Aff. ¶9. Kaplan had no motive in filing suit other than to collect the wages he reasonably believed he was owed. Kaplan Aff. ¶2.

In his Motion for Summary Judgment, Burrows admits Kaplan complained to him about wages. To be clear, an employee does not have to be right or correct about an alleged wage and hour violation to be protected from retaliation. The employee only needs to have a good faith belief that the employer violated the law. The protection of employees' good faith yet mistaken complaints is key to the enforcement of the FLSA and integral to carrying out Congress's intent. As the Supreme Court observed in *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288 (1960) the federal government does not directly oversee employers and rather chose to rely on information and complaints received from employees seeking to vindicate rights claimed to have been denied. *Id* at 292. With so much importance placed on protecting employees who make good faith complaints, employers should be wary of taking any retaliatory action against an employee and expect that courts will generally protect good faith complaints, even if mistaken. Moreover, Kaplan reasonably believed that federal law would compel APII to pay him if he worked for APII. Kaplan likewise was concerned that other employees of APII be paid. Kaplan Aff. ¶11. In addition and to be sure, the Eleventh Circuit has ruled that verbal complaints are considered "protected activity". *EEOC v. White & Sons, Enters.*, 881 F.2d 1006, 1011 (11th Cir. 1989). While Kaplan understands that the Court has already ruled that it was patently unreasonable that Kaplan considered his complaints

to Burrows at the time to be based on a reasonable belief that there had been a violation of the FLSA, the issue is whether Kaplan and his counsel should be sanctioned for bringing such a claim.

Significantly, Burrows admits that he did not "disclose Ronald Kaplan's complaint to any other officer, directors, or employees of APII." Dkt 24 at 5,1. Given that admission by Burrows, it can only be concluded that Burrows in his individual capacity repeatedly retaliated against Kaplan.

Prior to the retaliatory acts at issue in this matter, Kaplan's main responsibility was corporate development. In that position, Kaplan was to identify, evaluate, value and analyze possible acquisitions for APII and to provide insight to the company concerning the global toy market. Kaplan Aff. ¶3.

Moreover, one of Kaplan's primary duties/projects was taken away when, shortly after Kaplan presented his internal analysis of the project to Burrows, he was told by his negotiating counter part (who had all along dealt exclusively with Kaplan as the Executive VP of Corporate Development), that Burrows suddenly made direct contact and the agent was instructed by Burrows to deal with him as the Chief Financial Officer. Kaplan Aff. ¶9. This occurred following Kaplan's original complaint to Burrows. Kaplan Aff. ¶9. Such work by Kaplan was critical to the ongoing success of APII and Kaplan's most significant responsibility during this period. To have this responsibility removed and to learn about it from Kaplan's counterpart in another company, was not only awkward and insulting, but such action by Burrows served to "gut" one of Kaplan's main duties for APII.

Following a subsequent complaint to Burrows about pay, a reduction in duties/authority, movement of his office, and SEC issues, additional authority/duties were taken from Kaplan by Burrows.

While demotion or termination are clear examples of retaliatory actions, those are not the only actions considered adverse in the Eleventh Circuit.  Indeed, the Eleventh Circuit has repeatedly made clear that an adverse employment action does not mean "ultimate employment decision".  More specifically, in *Wideman v. Wal-Mart Store, Inc.*, the Eleventh Circuit ruled that scheduling conflicts, reprimands, soliciting negative evaluations, and delaying medical treatment authorizations, while short of ultimate employment decisions, were nevertheless considered adverse actions under the retaliation provisions of the FLSA. *Wideman v. Wal-Mart Store, Inc,* 141 F. 3d.  (11th Cir. 1998).

The Eleventh Circuit has explained that an adverse action must " … alter the employee's compensation, terms, conditions, or privileges of employment." *Stavropoulous v Firestone*, 361 F. 3d 610 616 (11th Cir. 2004).

Following his original complaint, Kaplan's authority, duties and "independent discretion" were taken by Burrows.  Without pay and now without "exempt" duties, Kaplan complained about pay, duties and other issues and further retaliatory acts were taken leaving Kaplan with no authority regarding corporate development.  That Kaplan was singled out regarding his pay is borne out, in part, through review of the payroll register attached to the affidavit of Kaplan.  This payroll register covering the period from November 3, 2009 – November 16, 2009 shows that Kaplan's pay had been reduced, while other employees listed on the payroll registered continued to make their

regular salary.  Unfortunately, Kaplan did not come into possession of this payroll document until after the response to Plaintiff's summary judgment motion had been filed.

In 2009, Kaplan as a long time APII employee also heard that other employees were either not getting paid or were having their pay reduced without notice.   As a result, Kaplan complaint to Burrows not only about his own situation, but also about the pay of other employees.   Unfortunately, this led to addition retaliatory actions by Burrows including being excluded from all meetings in which Kaplan had previously participated regarding acquisitions and other significant issues.  In line with the holding in *Stavropoulous* and due specifically to Burrows retaliatory actions,  Kaplan work conditions had become so intolerable that he was left no choice but to separate his employment.   *Stavropoulous*  361 F. 3d at 617

Because Kaplan was not deposed in the instant matter, there is no comprehensive testimony from him regarding all the facts at issue in this matter.   Kaplan's affidavits in this matter have provided those facts which Kaplan believed were most relevant to the court's analysis of the claims and defenses.  Kaplan regrets that the affidavits may not have provided a comprehensive set of facts which the court may deem necessary to its analysis.

In this Court's Order on Summary Judgment, this Court did clearly state that Kaplan's claim under the FLSA was patently unreasonable.   Unfortunately, because summary judgment was filed and a response was due prior to any discovery in this matter and because the order on summary judgment was issued without the benefit of the discovery which did take place, the order does not reflect that discovery.  Significantly, in the only sworn written discovery in this matter, Kaplan does not demand any unpaid

wages from Burrows.  This fact was included with the response to Burrows Motion for Sanctions.  While Kaplan still believes he is owed wages, he understands that since he received a judgment against APII for wages, he cannot demand wages, even though those wages were never paid, from Burrows.  .

In its Report and Recommendation, the Court points to a possible bad faith motive by Kaplan and his counsel in bringing the claims in this matter.  To that end, the Court points to arbitration where attorney Blanchfield previously represented APII in a claim brought by Burrows.  During that arbitration, Blanchfield did gain significant insight regarding the "rise" and "fall" of APII and the financial and other reasons for the company's issues.  Blanchfield did not meet, speak with, depose or have any direct dealing or contact with Burrows during the arbitration and withdrew from the arbitration as directed by APII prior to the taking of depositions.  Blanchfield has no animus toward Burrows and certainly has no reason to bring a bad faith claim against Burrows.  Blanchfield understood from Kaplan prior to the filing of the initial complaint in this matter that Kaplan and others had their pay reduced or were not paid wages at the direction of Burrows who controlled APII finances and payroll, and that Kaplan complained about pay and other issues to Burrows and that Kaplan's duties and authority were taken by Burrows as a result of those complaints.  On those facts, a complaint was filed.  While Blanchfield does not typically represent Plaintiffs, he agreed to represent Kaplan since Blanchfield knew APII and understood that Kaplan had genuine concerns about his own pay, the pay of other employees and those actions which were taken against him for making complaints about those issues and other issues.

To be sure, no actions by Kaplan or his counsel were made in bad faith.  Kaplan had separated his employment with APII before Burrows filed his arbitration claim.  Kaplan had no reason to file a complaint against Burrows as a result of the Burrows arbitration matter.  See Kaplan Aff. 2.  Regarding the issue of the reasonableness of Kaplan's claims, it is not disputed that Kaplan had no background in employment law.  The sophistication of the Plaintiff regarding the law and since state of mind of the Plaintiff is an issue for consideration regarding the reasonableness of the claims.  See e.g. *Moyo v Gomez* 40 F,3d 982, 984 (9th Cir. 1994); *Parke v Baltimore & Ohio RR*, 662 F.2d 1012 (D.C. Cir. 1981); *Quinn v. Green Tree Credit Corp*. 159 F.3d 768 (2d 1998).

Regarding the support for Kaplan's claims, Kaplan, through three affidavits has provided what appears to be requisite factual support for both claims in the Complaint.  See e.g. *Beyers v Dallas Morning News, Inc*. 209 F.3d 419 (5th Cir. 2000).  While this Court has held that Kaplan's claims were patently unreasonable, such claims were not brought in bad faith and certainly were not intended to harass Burrows.  Kaplan regrets than any action on his part has taken the Court away from its significant other obligations.   Attorney Blanchfield likewise regrets that the Court has consumed considerable time evaluating the claims in this matter .

Kaplan and his counsel therefore respectfully object to the Report and Recommendation regarding Fed. R. Civ. P. 11 and ask that no sanctions are recommended in this matter.

**WHEREFORE,** the Plaintiff and his Counsel respectfully move the Court not to recommend sanctions in this matter.

>Respectfully submitted,
>
>/s/ Robert Blanchfield
>Robert E. Blanchfield, Esquire
>Florida Bar Number: 0361800
>bob@blanchfieldlawfirm.com.
>**ROBERT BLANCHFIELD, P.A.**
>127 West Fairbanks Ave.
>Winter Park, Florida  32789
>(407) 497-0463
>(407) 386-8022 Facsimile
>Co-Counsel for Plaintiff

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 20th day of September  2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record in this matter.

>/s/ Robert Blanchfield
>Attorney